**DOCKET NO. 22-13217**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## DAVID E. STONE, KARI S. CARROLL, and
## DAVID DEPADRO,

*Plaintiffs/Appellants*

v.

## COMMISSIONER, INTERNAL REVENUE SERVICE,

*Defendant/Appellee*

---

## On Final Appeal from the United States District Court
## for the Southern District of Florida

---

## PRINCIPAL BRIEF OF APPELLANT

---

Gerald F. Richman
Florida Bar No.: 066457
**FISHER POTTER
HODAS, PL**
515 N. Flagler Drive, Suite 800
West Palm Beach, Florida 33401
gerry@fphlegal.com
eservice@fphlegal.com

Robert J. Hauser
Florida Bar No. 55141
B.C.S. (Appellate Practice)
**SNIFFEN & SPELLMAN, P.A.**
605 North Olive Avenue,
Second Floor
West Palm Beach, Florida 33401
rhauser@sniffenlaw.com
mrodriguez@sniffenlaw.com

Docket No. 22-13217
Stone et al. v. Comm'r of Internal Revenue Serv.

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and 11th Circuit Rules 26.1-1 through 26.1-3, the undersigned counsel for the Appellant, certifies that the following is a complete list of trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, and includes subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

There are no known stock ticker symbols or publicly traded entities among these parties:

1. Carroll, Kari S., Plainiff-Appellant

2. DePadro, David, Plaintiff-Appellant

3. Fisher Potter Hodas, Counsel for Plaintiffs-Appellants

4. Hauser, Robert J., Counsel for Plaintiffs-Appellants

5. Hume, Lauren E., Counsel for Defendant-Appellee

6. Marra, Kenneth A., U.S. District Judge

7. Richman, Gerald F., Counsel for Plaintiffs-Appellants

8. Scherer, Kenneth, Counsel for Plaintiffs-Appellants

9. Stone, David E., Plaintiff-Appellant

Docket No. 22-13217
Stone et al. v. Comm'r of Internal Revenue Serv.

10. Weisberg, Andrew Joseph, Counsel for Defendant-Appellee

Dated this 6th day of January, 2023:

By: */s/ Robert J. Hauser*
Robert J. Hauser
Florida Bar No. 55141

## STATEMENT REGARDING ORAL ARGUMENT

Appellants are whistleblowers who request oral argument. This Administrative Procedure Act case has far-reaching implications for the mortgaged-backed securities industry, which to date has not and does not comply with the requirements of Internal Revenue Code in order to obtain favorable tax treatment. The result is a scandalous and *ultra vires* policy decision by the executive branch to cede billions of tax dollars to the largest banks operating in the United States, in violation of Congressional directive and at the expense of ordinary taxpayers. Appellants submit that oral argument will assist the Court in resolving the questions presented, including the government's asserted *res judicata* and sovereign immunity defenses.

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT .....................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................i

TABLE OF CONTENTS............................................................. ii

TABLE OF AUTHORITIES ....................................................iv

STATEMENT REGARDING ADOPTION OF
   BRIEFS OF OTHER PARTIES ........................................................1

STATEMENT OF JURISDICTION ...................................................2

STATEMENT OF THE ISSUES ....................................................3

STATEMENT OF THE CASE ....................................................4

Procedure Below ....................................................4

Statement of the Facts....................................................5

Standard of Review....................................................11

SUMMARY OF ARGUMENT ...............................................12

ARGUMENT ....................................................14

    I.    ***Res judicata* did not bar the suit** .......................................14

        A.    The Tax Court cannot decide whether the IRS
            is misreading the Internal Revenue Code ................................15

        B.    No review of the Tax Court was sought below .......................17

        C.    The district court mistook this case as a claim
            for "an award" ..........................................................18

**II.    The Government waived sovereign immunity for purpose of non-monetary claims seeking to correct arbitrary and capricious agency action under the APA** ...........................................................20

    A.    The United States waived sovereign immunity for APA claims other than for money damages.............................20

    B.    There is no "adequate remedy" for the IRS's legal errors outside of the APA ........................................................21

    C.    Final, erroneous IRS resolution of a tax policy question can be set aside as "arbitrary and capricious" ..........29

    D.    No other statutory bar existed ...................................................32

**III.   The government abandoned its service of process argument upon obtaining a favorable decision on the merits**.......................................................................33

CONCLUSION .................................................................................34

CERTIFICATE OF COMPLIANCE ...................................................35

CERTIFICATE OF SERVICE ............................................................36

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                              <u>**Page**</u>

*Adams v. Richardson,*
   156 U.S. App. D.C. 267, 480 F.2d 1159 (1973) ................................................31

*Amador v. Mnuchin,*
   476 F. Supp. 3d 125 (D. Md. 2020) ...........................................19, 25, 26, 29

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) .............................11

*Bowen v. Massachusetts,*
   487 U.S. 879, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) .........21, 22, 25, 29

*Brown v. R.J. Reynolds Tobacco Co.,*
   611 F. 3d 1324 (11th Cir. 2010) ...................................................................17

*City of Philadelphia v. Sessions,*
   309 F. Supp. 3d 271 (E.D. Pa. 2018) ...........................................................30

*Cohen v. Comm'r,*
   139 T.C. 299 (2012)......................................................................................16

*Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.,*
   692 F. 3d 1200 (11th Cir. 2012) ...................................................................20

*FDIC v. Meyer,*
   510 U.S. 471 (1994)......................................................................................27

*Gates v. Khokhar,*
   884 F. 3d 1290 (11th Cir. 2018) ...................................................................11

*Gregory v. Helvering,*
   293 U.S. 465 (1935)............................................................................9, 11, 29

*Heckler v. Chaney,*
   470 U.S. 821, 105 S. Ct. 1649,
   84 L. Ed. 2d 714 (1985) ........................................................................ 30-31

*Hopper v. Solvay Pharms., Inc.*
    588 F. 3d 1318 (11th Cir. 2009) ....................................................................11

*In re Aiken County,*
    725 F. 3d 255 (D.C. Cir. 2013) .........................................................31

*In re Piper Aircraft Corp.,*
    244 F. 3d 1289 (11th Cir. 2001) ...................................................15

*Jackson v. DeSoto Parish School Bd.,*
    585 F. 2d 726 (5th Cir. 1978) ........................................................20

*Jackson v. Warden,* FCC Coleman-USP
     259 F. App'x 181 (11th Cir. 2007) ............................................33

*Jaffree v. Wallace,*
    837 F. 2d 1461 (11th Cir. 1988) .................................................20

*Keating v. City of Miami,*
    598 F. 3d 753 (11th Cir. 2010) ...................................................11

*King v. Burwell,*
    759 F. 3d 358 (4th Cir. 2014),
    *aff'd,* 576 U.S. 473 (2015).................................................23-25, 27, 28-29

*Leib v. Hillsborough County Pub. Transp. Comm'n,*
    558 F. 3d 1301 (11th Cir. 2009) ...................................................11

*Maldonado v. U.S. Atty. Gen.,*
    664 F. 3d 1369 (11th Cir. 2011) ............................................14, 15

*Manning v. City of Auburn,*
    953 F. 2d 1355 (11th Cir. 1992) .................................................16

*McKinnon v. Blue Cross & Blue Shield of Ala.,*
    935 F. 2d 1187 (11th Cir. 1991) ........................................... 16-17

*McKoy v. Spencer,*
    271 F. Supp. 3d 25 (D.D.C. 2017) ............................................21

v

*Meidinger v. Commissioner,*
   662 Fed. App'x 774 (11th Cir. Oct. 24, 2016) .............................................19

*Mitchell v. Maurer,*
   293 U.S. 237, 55 S. Ct. 162, 79 L. Ed. 338 (1934) ......................................27

*Norvell v. Sec'y of the Treasury,*
   821 F. App'x 853 (9th Cir. 2020) .................................................................19

*Palms of Destin Club, LLC v. Communications Processing*
   *Systems, Inc.,*
      No. 21-12202, 2022 WL 293960 (11th Cir. Feb. 1, 2022)...........................15

*Pardazi v. Cullman Med. Center,*
   896 F. 2d 1313 (11th Cir. 1990) ...................................................................33

*Ragsdale v. Rubbermaid, Inc.,*
   193 F. 3d 1235 (11th Cir. 1999) ...................................................................15

*Richardson v. Ala. State Bd. Of Educ.,*
   935 F. 2d 1240 (11th Cir. 1991) ...................................................................16

*Rivera v. Internal Revenue Serv.,*
   708 F. App'x 508 (10th Cir. 2017) ................................................................32

*Sanderlin v. Seminole Tribe of Fla.,*
   243 F. 3d 1282 (11th Cir. 2001) ...................................................................20

*Scholl v. Mnuchin,*
   494 F. Supp. 3d 661 (N.D. Cal. 2020) ............................................... 25-26, 28

*Shurick v. Boeing Co.,*
   623 F. 3d 1114 (11th Cir. 2010) ...................................................................16

*U.S. Army Corps of Engineers v. Hawkes Co.,*
   578 U.S. 590, 136 S. Ct. 1807,
   195 L. Ed 2d 77 (2016) ....................................................................... 22-23

**Statutes and Rules**

5 U.S.C. § 702 ..............................................................13, 20, 21

5 U.S.C. § 704 .......................................................... 19, 21-22, 24, 27

26 U.S.C. § 7422 .......................................................... 24-29

26 U.S.C. § 7623 .......................................................... *passim*

28 U.S.C. § 1291 ..............................................................2

29 U.S.C. § 1331 ..............................................................2

Rule 28(i), Fed. R. App. P. ..............................................................1

Rule 12(b)(6), Fla. R. Civ. P. ..............................................................11

**Other Authorities**

H.R. REP. 94-1656, 1976 U.S.C.C.A.N. 6121 ..........................................................21

## <u>STATEMENT REGARDING ADOPTION OF BRIEFS<br>OF OTHER PARTIES</u>

The Appellants do not adopt any portion of any other briefs pursuant to

Federal Rule of Appellate Procedure 28(i).

## <u>STATEMENT OF JURISDICTION</u>

The district court had "federal question" jurisdiction under 28 U.S.C. § 1331 because the Complaint arose under the laws of the United States. This Court has appellate jurisdiction to review the district court's final decision pursuant to 28 U.S.C. § 1291 (relating to final decisions of the district court of the United States). A final judgment was entered on June 3, 2022 based on a memorandum order granting a motion to dismiss. [D.E. 24, 25]. A timely motion for reconsideration was filed on June 30, 2022 [D.E. 26]. Reconsideration was denied on July 29, 2022. [D.E. 29]. A notice of appeal was timely filed on within 60 days on September 26, 2022. [D.E. 30].

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether the district court erred in dismissing the action below with prejudice on the basis of "res judicata." [*See* D.E 24 at pp. 9-12].

2.      Whether the district court erred in dismissing the action below with prejudice for lack of subject matter jurisdiction / "sovereign immunity." [See D.E. 24 at pp. 6-9].

## STATEMENT OF THE CASE

### Procedure Below

On January 31, 2022, Plaintiffs filed suit [D.E. 1] against the Commissioner of Internal Revenue Service and under the Administrative Procedure Act, seeking the district court's review of the IRS' prior rejection of Plaintiffs' Whistleblower claims as arbitrary and capricious actions. In response, Defendant filed a motion to dismiss Plaintiffs' Complaint [D.E. 10], alleging (1) res judicata (pp. 5-8), (2) the United States has not waived sovereign immunity (pp. 8-14), and (3) failure to effectuate proper service of process (pp. 9-15). The motion was briefed. [D.E. 19, 20]. The district court granted the motion to dismiss with prejudice, in its own words, for "lack of subject matter jurisdiction, and, alternatively, on res judicata grounds." [D.E. 29 at 1 (referring to D.E. 24)]. It entered judgment and denied a timely motion for reconsideration after briefing. [D.E. 25, 26, 27, 28, 29].

This appeal followed.

**Statement of the Facts**

Plaintiffs filed suit. [D.E. 1]. For purposes of this appeal, it is sufficient to summarize the following underlying tax allegations as the facts of this case:

In 1986, Congress enacted a tax reform act which encompassed major revisions to the Internal Revenue Code ("I.R.C." or "the Code"). These revisions included a new Section 860D of the Code, which defined a Real Estate Mortgage Conduit (a "REMIC") as an entity that could avoid any income taxation on revenue from investments in their mortgage portfolios if the REMIC met certain statutory qualification requirements. This revision would have enabled REMICs and their sponsors to receive special favored income tax treatment as tax-exempt entities so long as they complied with the provisions of the Code. [D.E. 1 at ¶ 6].

In practice, the REMICs failed to comply. [D.E. 1 at ¶ 7, 11-22]. As a result, they and their sponsors were not legally entitled to receive this favorable tax treatment. [D.E. 1 at ¶¶ 8-11]. In essence, the financial industry separated notes from mortgages, so that the notes could be sold to investors without any recorded transfer of the real estate security. [*Id.* at ¶¶ 18-21]. As a result, REMICs did not obtain tax exempt status, and their income was always taxable to their sponsors. [*Id.* ¶¶ 36-38]. Plaintiffs were prompted to "blow the whistle," to no avail. [*Id.* ¶ 39].

<u>IRS Whistleblower filings</u>

On March 18, 2011, Plaintiffs STONE and CARROLL filed Whistleblower Claims. [D.E. 1 Exhibit A; *see* D.E. 1 at ¶24]. IRS analyst Felipe Castellanoz ("Castellanoz") sent Acknowledgement of Claim letters to STONE and CARROLL. [D.E. 1 Composite Exhibit B]. A few months later, Castellanoz referred both Whistleblower Claims to the IRS Large Business and International Division Financial Services Industry ("LB&I") for auditing of the Whistleblower Claims. [D.E. 1 at ¶24.C].The Whistleblower Claims were evidently assigned to Kyunghee Piraino ("Piraino") of LB&I for review. [D.E. 1 Composite Exhibit C].

Further supplemental documents were provided to LB&I in the course of the review by LB&I, receipt of which were acknowledged by Piraino on December 11, 2011. Additionally, CARROLL submitted 2 Compact Discs containing information on the named taxpayer-bank sponsors of various REMICs. [D.E. 1 at ¶ 24.D].

On August 28, 2012, there was an exchange of emails between Steven Petersell, a Senior Team Coordinator at LB&I with Ting Yuen discussing the fact that the Plaintiff's claim could have far-reaching results. [D.E. 1 at ¶ 24.E.]. Petersell felt that the claims made by the Plaintiffs could expand beyond the REMICs which were the subject matter of Plaintiff's claims. [D.E. 1 Exhibit D].

The IRS Field Audit Division Group 1114 forwarded the Plaintiff's Whistleblower Claims to Castellanoz. In a memorandum to the manager of this Group, Castellanoz stated in part:

> These returns relate to a [Whistleblower] claim impacting numerous taxpayers. The REMIC IPG has reviewed the information and determined it has merit. LBI executives and Counsel have decided that only a sample of returns/taxpayers should be examined at this time and the REMIC IPG selected this return. (emphasis added).

[D.E. 1 at 9 ¶ 24.F].

Castellanoz sent a memorandum to Steven J. Petersell, Senior Team Coordinator and the LBI audit team leader, that the Government has determined to examine the issue identified by STONE and CARROLL and stated in part:

> Although the government does not dispute the claimants [sic] allegations, to examine the transfer of title for all loans in the trust, the government would expend significant resources. (emphasis added).

[D.E. 1 at ¶ 24.G, Exhibit E].

On October 27, 2015, the IRS sent its Preliminary Denial Letter, and on February 1, 2016, the IRS sent its Final Denial Letter. [D.E. 1 Composite Exhibit F].

On February 26, 2016, STONE and CARROLL sought a review of the denial of their Whistleblower Claims by the Tax Court. [D.E. 1 Exhibit G]. On July 11, 2017, the Tax Court affirmed the decision that STONE and CARROLL were not entitled to an award. [D.E. 1 Exhibit H].

On March 26, 2012, DEPADRO filed his Whistleblower Claim (claim 2012-003933). [D.E. 1 Exhibit I; *see* D.E. 1 at ¶25]. Only days later, the IRS sent an Acknowledgement of Claim letter to DEPADRO. [D.E. 1 Exhibit J].

Four years later, on March 22, 2016, the IRS sent DEPADRO a Preliminary Denial Letter. On August 27, 2016, the IRS sent DEPADRO a Final Denial Letter. [D.E. 1 Exhibit K].

On August 29, 2016, DEPADRO sought review of the IRS' Final Denial to the Tax Court. [D.E. 1 Exhibit L]. On November 11, 2017, the Tax Court affirmed the Commissioner of Internal Revenue's final determinations that the Plaintiffs in this matter are not entitled to an award under section 7623 on November 11, 2017. [D.E. 1 Exhibit M].

<u>The claims of the Plaintiffs in this litigation</u>

Plaintiffs alleged below that the Plaintiffs' allegations were true and had sealed documents in hand to validate the Whistleblower claims. [D.E. 1 at ¶ 26]. As a result, (1) the claims should have been properly investigated; (2) at least *some* REMICs should have been reviewed and audited; and (3) the IRS should have conducted administrative proceedings on their claims to recover the tax due from the responsible entities. [D.E. 1 at ¶ 26].

Instead, Plaintiffs allege that the IRS egregiously misunderstood and misapplied the law. [D.E. 1 at ¶ 26]. In other words, to qualify as a tax-exempt entity,

the REMIC must take title to a pool of qualified mortgages within 90 days of the startup date. That requirement was not met; the IRS knew it; and still misapplied the law. Plaintiffs alleged that the IRS made an erroneous legal decision under the "substance over form" doctrine established in *Gregory v. Helvering*, 293 U.S. 465 (1935). The teaching of *Gregory* is that the IRS may look through the form of a taxpayer's structure to determine whether in substance it qualifies for the taxpayer's desired taxation result. [D.E. 1 at ¶ 26].

Moreover, upon information and belief, the IRS mistakenly understood Plaintiffs' Whistleblower claims to be primarily based upon fraudulent "robo-signing". [D.E. 1 at ¶ 27]. Pursuing robo-signing, though a fraudulent practice that should not be tolerated, arguably falls within the ambit of agency discretion. The Whistleblowers' claims, on the other hand, are statutory. Congress is the Article I branch that sets the rules. The executive Article II branch is charged with enforcing those rules. [D.E. 1 at ¶ 27].

In addition, the IRS has written standards of conduct for IRS procedure when it receives a tip from a Whistleblower. [D.E. 1 Ex. N]. According to the Deputy Commissioner for Services and Enforcement for the IRS, a confidential informant should be extensively interviewed and kept informed as to the development of the submitted information to assist the IRS in a more efficient investigation. Unfortunately, the IRS failed to follow its own guidelines. [D.E. 1 at ¶¶ 28-29].

The IRS failed to meet these standards in its treatment of the Plaintiffs' previously-filed whistleblower claims. [D.E. 1 at ¶ 29]. It reached "final agency action" on the claims. [D.E. 1 at ¶4]. Based on those allegations, the APA suit below seeking review resulted. [D.E. 1]. Plaintiffs contend that because REMICs owe tax, the IRS has a statutory duty to investigate and collect the tax, or to at least make an informed decision that it not arbitrary and capricious. Although the IRS may have "discretion" to decide not to audit certain taxpayers, that "discretion" does not include the right to abdicate its statutory responsibilities by writing off an entire category of revenue contrary to Congressional intent. [D.E. 1 ¶ 26]. The IRS did not engage in reasoned decision-making in purporting to exercise discretion and therefore reached arbitrary and capricious final agency action. [D.E. 1 ¶¶ 31-39].

## **Standard Of Review**

The Court of Appeals "review[s] de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Hopper v. Solvay Pharms., Inc.,* 588 F.3d 1318, 1324 (11th Cir. 2009) (*citing Leib v. Hillsborough County Pub. Transp. Comm'n,* 558 F.3d 1301, 1305 (11th Cir.2009)).

For purposes of the motion to dismiss, the district court was required to accept all of the allegations of the complaint as true.

> When ruling on a motion to dismiss, we "accept[ ] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To avoid dismissal, the "complaint must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged. Id.

*Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018).

Here, the government did not challenge any of the Plaintiff's underlying allegations. Accordingly, for purposes of this appeal, it must be assumed that the IRS violated the federal tax code and acted arbitrarily and capriciously, when it deemed the REMICs to be in compliance under the *Gregory v. Helvering* "substance over form" doctrine. *See.* D.E. 1 ¶ 26.

11

## SUMMARY OF ARGUMENT

The district court first erred in accepting the IRS' *res judicata* argument. To succeed on a res judicata defense, the burden was on the IRS to establish that the same "cause of action" was already presented to the U.S. Tax Court. The IRS failed to do so.

On *de novo* review, this Court accepts all of the allegations of the complaint as true, including the allegation that the IRS has egregiously misapplied federal tax law and made an "arbitrary and capricious" legal decision. This Court should reverse and hold that the prior United States Tax Court decision was not "res judicata," because that court did not and could not review the IRS' legal position on uncollected REMIC taxes. The Tax Court is an Article I court with severely limited jurisdiction under the Internal Revenue Code. Its only job is to determine finder's fees due to Whistleblowers who provide information to the IRS.

The Tax Court did not and could not have reviewed the IRS' substantive underlying decision not to interview the Plaintiffs, not to investigate, or to refuse to collect an entire category of taxes that it internally concluded are likely due from REMICs. Accordingly, APA review of a substantive tax law question is a completely different cause of action and *must* necessarily be sought in a different court.

The district court further erred by accepting the IRS' position that it had sovereign immunity from an APA challenge to its legal decisions. On *de novo*

review, this Court should hold that sovereign immunity for administrative challenges under the APA is expressly waived by the United States under 5 U.S.C. § 702. No money damages are sought below. Further, for the same reasons that the Tax Court decision was not *res judicata*, a claim for an unpaid finder's fee under 26 U.S.C. § 7623 is not an "adequate" legal remedy for the IRS' "arbitrary and capricious" unlawful nationwide legal stance on uncollected REMIC taxes. For these failures, the Tax Court offers no remedy at all. APA review is needed.

The IRS' claim to have absolute discretion should be rejected. Its position would mean that statutory Whistleblowers can never challenge the erroneous, substantive legal positions of the IRS, ever, in any court, even if those positions amount to an abdication of its statutory responsibilities. This Court should reject that position and remand for further proceedings.

The IRS' original objection to service of process was not addressed by the district court. The Plaintiffs requested and obtained an extension for service of process; the district court thereafter dismissed on the merits. If the district court actually believed that service was insufficient, then its dismissal should have been without prejudice.

The district court's judgment is due to be reversed.

## **ARGUMENT**

The IRS' motion to dismiss contended that the Plaintiffs' complaint was substantively barred by *res judicata* [D.E. 10 at 5-8] and that the United States had not waived its sovereign immunity. [D.E. 10 at 8-14]. The IRS' third argument, lack of service [D.E. 10 at 14-15], was waived when it consented to an extension of time for service of process. [D.E. 23]. The district court eventually granted the IRS' motion on substantive grounds, finding that it lacked jurisdiction to hear the case and that the relief was barred by the prior decision of the U.S. Tax Court. [D.E. 24]. Accordingly, each argument is addressed below.

### I.    *Res judicata* **did not bar the suit.**

The IRS led off with the argument below that this case is barred by the doctrine of *res judicata*. [D.E. 10 at 5-8]. Plaintiffs responded that the instant case relies on a different set of facts from those presented in Tax Court and did not present the same cause of action. [D.E. 19 at 2-3 ("res judicata cannot apply in this instance because the same cause of action is *not* involved here")]. On appeal, that issue is reviewed *de novo*. "Because res judicata determinations are pure questions of law, we review them de novo." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011).

The IRS' position below reflected a distorted understanding of *res judicata*, which completely overlooked the limited powers and jurisdiction of the U.S. Tax

Court to hear the present "cause of action." To succeed on res judicata, there are four elements which must be common: (1) the prior judgment must have been a final judgment on the merits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases. *Palms of Destin Club, LLC v. Communications Processing Systems Inc.*, No. 21-12202, 2022 WL 293960, at *4 (11th Cir. Feb. 1, 2022). "If one of these elements is missing, res judicata does not apply." *Id.* at *5.

### A.    The Tax Court cannot decide whether the IRS is misreading the Internal Revenue Code.

Element (4) was critical, because the two cases are not the "same cause of action." *Res judicata* "bars the filing of claims which were raised or *could have been raised in an earlier proceeding*." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (e.s.) (citing *Ragsdale v. Rubbermaid, Inc*., 193 F.3d 1235, 1238 (11th Cir.1999)). As further explained, "the key inquiry here is whether the new claim 'could have been raised' in the prior proceeding." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011) (quoting *In re Piper Aircraft Corp*., 244 F.3d 1289, 1296 (11th Cir.2001)).

It is undisputed that, regardless of what Plaintiffs had *asked for* in the United States Tax Court, the Tax Court had limited jurisdiction under the Internal Revenue Code. It only reviews "an award" under 26 U.S.C. § 7623(b)(4). The Tax Court is

15

an Article I tribunal. It could not have reviewed the IRS' substantive underlying legal decisions, or the decisions not to interview the Plaintiffs, not to investigate, or to refuse to collect taxes that are due from REMICs. *E.g.*, *Cohen v. Comm'r*, 139 T.C. 299 (2012), *aff'd*, 550 F. App'x 10 (D.C. Cir. 2014). In other words, even if Plaintiffs *had* sued to review that action under the APA, that relief would have been correctly denied without prejudice for lack of jurisdiction. Accordingly, any APA review *must* necessarily be sought in a different court.

"The doctrine of claim preclusion (or res judicata) bars the parties to an action from relitigating matters that were or *could have been litigated* in an earlier suit." *Shurick v. Boeing Co*., 623 F.3d 1114, 1116 (11th Cir. 2010) (e.s.). Although the U.S. Tax Court has jurisdiction to evaluate Whistleblower fees (essentially finder's fees), it always lacked jurisdiction to set aside a substantive administrative decision not to interview Whistleblowers or deem tax to be due from REMICs under the APA. *See Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992) ("Res judicata ... bars relitigation of matters that were litigated or *could have been litigated* in an earlier suit."); *Richardson v. Ala. State Bd. of Educ*., 935 F.2d 1240, 1244 (11th Cir.1991) (e.s.) ("The doctrine of res judicata ... forecloses relitigation of matters *actually or potentially litigated* in an earlier lawsuit."); *McKinnon v. Blue Cross & Blue Shield of Ala*., 935 F.2d 1187, 1192 (11th Cir.1991) ("Res judicata is a doctrine

of claim preclusion which operates to prevent litigation of matters that were raised or should have been raised in an earlier suit.").

The term "res judicata" is Latin for "a thing adjudicated." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010). Here, the APA "cause of action" to review the underlying tax policy decision is the "thing." It was never "potentially litigated," much less adjudicated. It couldn't be heard in Tax Court. Accordingly, the IRS erroneously claimed that Plaintiffs' APA claim "should have been raised" in the earlier suit. Nor can the IRS claim that the IRS decision not to pursue tax from REMICs was a matter to be "potentially litigated" in Tax Court. *It could not be raised there*. Accordingly, it would be wholly illogical to conclude that a Tax Court that lacked jurisdiction nevertheless adjudicated the APA claim with finality as a "thing adjudicated."

## B. No review of the Tax Court was sought below.

The IRS re-characterized Plaintiffs' APA suit as solely an attempt to appeal or override the Tax Court's decisions on Whistleblower fees. [D.E. 10 at 8,9]. This was an incorrect restatement of the IRS' *res judicata* argument. For the present, plainly no such fees are due, because no tax has been collected yet. An appeal of the Tax Court decision to review "an award" in the Court of Appeals would be a pointless waste of resources.

But a secondary effect of APA review may be that, in the future, a Whistleblower fee could become due. For example, if the IRS were to follow its internal processes and federal tax law, a consequence of that future decision could be a tax recovery. But that entitlement is plainly not ripe and those circumstances were not yet before the district court.

### C.    The district court mistook this case as a claim for "an award."

The district court was further confused in its *res judicata* discussion, because it misconstrued the present case as having been brought under paragraph 3 of I.R.C. subsection 7623(b):

> **(3) REDUCTION IN OR DENIAL OF AWARD**
>
> If the Whistleblower Office determines that the claim for an award under paragraph (1) or (2) is brought by an individual who planned and initiated the actions that led to the underpayment of tax or actions described in subsection (a)(2), then the Whistleblower Office may appropriately reduce such award. If such individual is convicted of criminal conduct arising from the role described in the preceding sentence, the Whistleblower Office shall deny any award.

At page 8 of its decision [D.E. 24], the district court determined that the "Tax Court has exclusive jurisdiction over section 7623(b)(3)." *Id.* at 24. Paragraph b(4) of the statute plainly gives the Tax Court the right to decide whether "an award" is due to a Whistleblower. But Plaintiffs never challenged the Tax Court's right to decide whether a refund was due under paragraph 3 or 4 of the statute. At present, no award could possibly be due.

Rather, the district court continued to misconstrue the entire present case as having been brought to recover Whistleblower *fees*, instead of relating to review of Whistleblower *claims* about federal tax law. The district court relied on unpublished and non-binding authority for support. In *Meidinger v. Commissioner*, 662 Fed. Appx. 774 (11th Cir. Oct. 24, 2016), this Court affirmed the denial of injunctive relief under 26 U.S.C. § 7623(b)(4), without any discussion of the APA or whether an adequate remedy existed for the type of review sought under 5 U.S.C. § 704. Another case cited, *Norvell v. Sec'y of the Treasury,* 821 F. App'x 853, 854 (9th Cir. 2020) was an unpublished Ninth Circuit decision which could not be relied upon except for purposes of res judicata, law of the case, or collateral estoppel, none of which apply here.

It is true that Plaintiffs have a statutory interest in recovering Whistleblower fees someday, notwithstanding the present, stagnant posture of the IRS' investigation of REMICs. But that would be a future "secondary effect" of a successful APA challenge in an Article III court, based on substantive federal tax law. See *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 144 (D. Md. 2020).

If the district court holds on remand that REMICs are not tax exempt if they fail to meet the requirements of the Code, the IRS may eventually collect tax from REMICs. Upon the collection of those taxes in the future, an entirely different set of circumstances may apply to Plaintiffs' entitlement to Whistleblower fees, including

"an award" payable and reviewable in Tax Court. "Res judicata is no defense where, between the first and second suits, there has been a[ ] ... modification of significant facts creating new legal conditions." *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992) (quoting *Jaffree v. Wallace*, 837 F.2d 1461, 1469 (11th Cir. 1988) and *Jackson v. DeSoto Parish School Bd.,* 585 F.2d 726, 729 (5th Cir.1978)).

## II.    The Government waived sovereign immunity for purposes of non-monetary claims seeking to correct arbitrary and capricious agency action under the APA.

The IRS also contended below that sovereign immunity barred Plaintiffs' cause of action under the APA. [D.E. 10 at 8-14]. Plaintiffs responded that the government waived sovereign immunity under section 702 of the APA. Consistent with that position, Plaintiffs reaffirmed that they are not seeking money damages. [D.E. 19 at 3-4].

This Court considers the IRS' defense *de novo*. "We review de novo the district court's dismissal of a complaint for sovereign immunity." *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla*., 692 F.3d 1200, 1203 (11th Cir. 2012) (quoting *Sanderlin v. Seminole Tribe of Fla*., 243 F.3d 1282, 1285 (11th Cir.2001))

### A.    The United States waived sovereign immunity for APA claims other than for money damages.

Sovereign immunity is plainly waived under Section 702 of the APA. That section provides in relevant part that:

20

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. In fact, in 1976 this statute was amended to its present form, specifically and intentionally clarifying that sovereign immunity did not bar judicial review of federal administrative action. "The proposed legislation would amend section 702 of title 5, U.S.C., so as to remove the defense of sovereign immunity as a bar to judicial review of federal administrative action otherwise subject to judicial review." H.R. REP. 94-1656, 1, 1976 U.S.C.C.A.N. 6121, 6121. "The 1976 amendment to § 702 was an important part of a major piece of legislation designed to remove 'technical' obstacles to access to the federal courts." *Bowen v. Massachusetts*, 487 U.S. 879, 896, 108 S. Ct. 2722, 2733, 101 L. Ed. 2d 749 (1988)

The cause of action asserted below fell within the scope of this 46-year-old waiver. The APA's waiver of sovereign immunity applied to the extent Plaintiff seeks relief "other than money damages." 5 U.S.C. § 702(a). *McKoy v. Spencer*, 271 F. Supp. 3d 25, 32 (D.D.C. 2017).

**B.    There is no "adequate remedy" for the IRS's legal errors outside of the APA.**

At pages 9-11 of its motion to dismiss [D.E. 10], the IRS argued that the Tax Court review of "an award" was an "adequate remedy" under 5 U.S.C. § 704 that

prohibited APA review of any underlying substantive final tax decisions. This argument was indistinguishable from its flawed *res judicata* argument which it raised [D.E. 10 at 6], in which it claimed that the Tax Court had "exclusive jurisdiction over § 7623 claims". Because the Tax Court does not and cannot review underlying substantive tax decisions of the IRS, this argument should have been rejected. There was *no remedy* available at all in Tax Court under section 7623 to address the IRS' underlying tax law decisions. It is a fallacy to equate the Tax Court's review of computation of fees with the underlying, substantive legal issues under the Tax Code which are initially decided by the IRS. "[D]oubtful and limited relief" from the Tax Court "is not an adequate substitute for review in the District Court." *Bowen v. Massachusetts*, 487 U.S. 879, 901, 108 S. Ct. 2722, 2736, 101 L. Ed. 2d 749 (1988) (allowing review of Medicaid reimbursement under the APA despite the existence of a remedy under the Tucker Act in Claims Court).

    1.  <u>There is a presumption that APA review is available.</u>

As explained by the United States Supreme Court, there is a presumption that all final agency action is reviewable by the APA. *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 601–02, 136 S. Ct. 1807, 1816, 195 L. Ed. 2d 77 (2016). In that case, the Court held that APA review was available to challenge the Army Corps of Engineers' determination that property proposed for peat mining contained "waters of the United States." This review was available even though the same

statute already had a mechanism to review the denial of a mining permit to do exactly what the applicant was proposing. 578 U.S. at 601-02. Moreover, the mere fact that permitting decisions were "reviewable should not suffice to support an implication of exclusion as to other agency actions." *Id.* at 602 (internal quotes and alterations omitted).

2. <u>Similar cases have allowed APA review despite the existence of alternatives far more suitable than the Tax Court review of a fee award in the instant case.</u>

Plaintiffs are similarly situated to other litigants who have successfully brought APA challenges against the IRS over objection. In fact, the meaningless Tax Court remedy invoked by the IRS in the instant case is *inferior* to the statutory remedies held to be *inadequate* in other successful APA review cases. *A fortiori*, pointless Tax Court review of a Whistleblower fee that plainly is not yet owed is also inadequate.

In *King v. Burwell*, 759 F.3d 358, 363 (4th Cir. 2014), the appellants brought suit challenging an IRS final rule interpreting the Affordable Care Act ("ACA"). The IRS decided to grant tax credits to individuals who purchase health insurance on both state-run insurance "Exchanges" and federally-facilitated "Exchanges" created and operated by the Department of Health and Human Services. The plaintiffs contended that the IRS' interpretation was contrary to the language of the

statute, which, they asserted, authorized tax credits only for individuals who purchased insurance on state-run Exchanges. 759 F.3d at 363-65.

The *King* plaintiffs eventually lost in the Fourth Circuit, and the IRS rule was affirmed on its merits. 759 F.3d at 375-76. That result was reviewed and upheld in a well-publicized decision of the United States Supreme Court on the ACA. *King v. Burwell*, 576 U.S. 473, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015)). But a threshold, jurisdictional issue for *King* was directly applicable here: whether the plaintiffs had had an "adequate remedy" under 5 U.S.C § 704 by seeking a tax refund. 759 F.3d at 366. In other words, the government defendants argued that the *King* plaintiffs did not belong in court: their only remedy to contest the "Exchange" definition controversy was not to sue at all, but to pay a tax penalty and then bring a tax-refund action after the fact under 26 U.S.C. § 7422. The Fourth Circuit considered this argument, but held that the possibility of a tax refund after-the-fact under section 7422 did not prevent APA review, because it would not "afford plaintiffs the complete relief they seek." 759 F.3d at 366-67.

The Fourth Circuit explained. The *King* plaintiffs were asking for declaratory and injunctive relief in an attempt to forestall the "lose-lose choice" of purchasing a product they do not want or paying the tax penalty. 759 F.3d at 367. The IRS proposed remedy, section 7422(a), did not allow for prospective equitable relief. Instead, the statute's role was "for the *recovery* of any internal revenue tax alleged

to have been erroneously or illegally assessed or collected." *King*, 759 F.3d at 367 (citing 26 U.S.C. 7422(a) (emphasis in Fourth Circuit opinion)). The Fourth Circuit held that the *King* plaintiffs were challenging the legality of a final agency action, which is consistent with the APA's underlying purpose of "remov[ing] obstacles to judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 904, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). 759 F.3d at 367. According to the Court of Appeals, "[r]equiring the plaintiffs to choose between purchasing insurance and thereby waiving their claims or paying the tax and challenging the IRS Rule after the fact created just such an obstacle." *Id.* at 367. The APA suit was therefore not barred, even though the tax could have been challenged and overturned after-the-fact. *King v. Burwell*, 759 F.3d 358, 366–67 (4th Cir. 2014), *aff'd*, 576 U.S. 473, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015)

This case is also similar to *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 144 (D. Md. 2020) and *Scholl v. Mnuchin*, 494 F. Supp. 3d 661 (N.D. Cal. 2020). In both *Scholl* and *Amador*, the IRS decided that CARES Act payments would not be available to incarcerated individuals.

In an attempt to block any APA review, the IRS argued that the plaintiffs were limited to a refund action under 26 U.S.C. § 7422, and that it was an 'adequate remedy' that removed the case from the APA. *See Scholl*, 494 F. Supp. 3d 661, 679-80 (N.D. Cal. 2020); *Amador*, 476 F.Supp. 3d at 142. The *Scholl* court looked to

*King*, for example. 494 F. Supp. 3d at 680. The government "cite[d] no case in which a court has determined sovereign immunity not to be waived on the grounds that the parties were first required to pursue a tax refund action." *Scholl v. Mnuchin*, 489 F. Supp. 3d at 1031.

The IRS' proposed "remedy," section 7422, would have required the plaintiffs to file a tax return, wait for denial of a CARES Act tax credit, and then file an administrative claim with the IRS seeking reconsideration before suing. Moreover, section 7422 did not authorize injunctive or equitable relief, and therefore was not an 'adequate remedy'. Because the suit "questions the administrative procedure" by which the IRS arrived at its decision, and alleged that the decision was unlawful, the APA claim went forward so it could be heard on its merits. *Scholl*, 494 F. Supp. 3d at 681. The *Amador* court explained that an alternative remedy is inadequate if it offers only "doubtful and limited relief," or requires impertinent threshold determinations before creating a decision ripe for review. 476 F. Supp. 3d at 143-44.

The logic of *Amador* applies with even more force here. Plaintiffs contend that the IRS is misreading the Internal Revenue Code and federal law. It has decided that billions of dollars of income earned by REMICs may remain untaxed, despite the wishes of the United States Congress. Just as in *Amador*, the limited Tax Court ability to review the amount of finder's fees due to Whistleblowers is not a substitute

for substantive APA review. The question of whether a fee is due is not pertinent to the underlying question, which is one of substantive tax law never reached, and which could not be reached, by the Tax Court. As in *King* and *Scholl*, equitable and injunctive relief is sought that is not available except under the APA. As in *Scholl*, Plaintiffs seek review of an unlawful, arbitrary and capricious decision-making process at the IRS.

We expect the government to point out that the United States Supreme Court did not discuss the existence of an "adequate remedy" in its eventual *King* affirmance. But the fact that the United States Supreme Court accepted jurisdiction and heard *King* is itself of critical consequence. Implicit in that decision to hear the case on its merits was the Supreme Court's agreement with the Fourth Circuit that the matter *belonged in court*: the lower federal courts each had subject matter jurisdiction to hear an APA challenge. *E.g.*, *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L. Ed. 338 (1934) ("An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review."). If an adequate remedy existed under the tax code, sovereign immunity from suit under 5 U.S.C. § 704 would have deprived each of the lower courts and the Supreme Court of jurisdiction. "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.*

Each of the *King* courts, for example, necessarily concluded that federal subject matter jurisdiction existed because the IRS' sovereign immunity was necessarily waived under the APA. If APA review was barred because an adequate remedy existed for a tax refund under 26 U.S.C. § 7422, the Supreme Court would have dismissed *King* on jurisdictional grounds, just as the IRS had urged in the Fourth Circuit. It could never have reached the well-publicized, substantive questions of whether the IRS was interpreting the ACA definition of "Exchanges" in accordance with law. *See King*, 576 U.S. 484-498.

3. <u>Money damages are not sought against the United States.</u>

In *Scholl,* the government argued that the plaintiffs were seeking a monetary tax benefit. *Scholl* was a claim to establish eligibility for an economic impact payment under the CARES Act. *Id.* at 670. The district court noted that even if the judicial remedy involved payment of money, it was not for 'money damages.' 494 F. Supp. 3d at 681.

In *Amador*, a pecuniary issue was also being litigated, but was not barred by sovereign immunity because "money damages" were not at issue:

> [P]laintiffs pursue only declaratory and injunctive relief. It is true that if a court were to enjoin the enforcement of § 6428(g)(1)(B), this might well result in plaintiffs' receipt of the impact payment. But, an injunction's secondary effects do not transform a suit for equitable relief into one for damages. Moreover, much as in *King*, this case cannot be characterized as a tax refund action. Plaintiffs do not "complain[ ] of the manner in which a tax was assessed or collected," nor do they seek "reimbursement for wrongly paid sums." *King*, 759 F.3d at 367.

> Instead, they "challenge the legality of a final agency action," id., namely the implementation of § 6428(g)(1)(B). Thus, just as § 7422 was an inadequate remedy in *King*, so it is here.

*Amador v. Mnuchin*, 476 F. Supp. 3d 125, 144 (D. Md. 2020). *Bowen v. Massachusetts*, 487 U.S. 879, 900, 108 S. Ct. 2722, 2735, 101 L. Ed. 2d 749 (1988) (a suit seeking to enforce a statutory mandate itself, which happens to be one for the payment of money, is not barred as a claim for "money damages").

In the instant case, Plaintiffs likewise did not seek "money damages" as defined. This remains the case even if the ultimate APA result could entitle Plaintiffs to recover a future Whistleblower award.

## C. Final, erroneous IRS resolution of a tax policy question can be set aside as "arbitrary and capricious."

As part of its incorrect "sovereign immunity" argument under the APA, the government argued below that the district court did not have the authority to order the IRS to begin an investigation of a taxpayer. [D.E. 10 at11-14].

The IRS' position attacked a straw man. Plaintiffs responded, explaining that the actual Complaint before the district court complained of arbitrary and capricious treatment of the underlying Whistleblower submissions, not the failure to audit any specific taxpayer. [D.E. 19 at 3]. In other words, as alleged at paragraph 26 of the Complaint, the IRS had misapplied the "substance over form" legal doctrine discussed in *Gregory v Helvering*, 293 U.S. 465 (1935). [D.E. 1 at 26]. The Complaint itself established that the IRS could not lawfully "step into the shoes of a

taxpayer to disregard a congressionally mandated pre-requisite to obtain favored tax treatment because it mistakenly thinks the tax result of non-compliance is the same." [D.E. 1 ¶26.] The district court did not directly reach these arguments in its memorandum decision. [D.E. 24].

At the motion to dismiss stage, the allegations of the complaint should have been accepted, particularly when unchallenged by the government. At the motion to dismiss stage, the government did not and could not establish that it had "discretion" to ignore the tax code or wholly abdicate specific statutory responsibilities. The record offers no basis to assume that a policy of exempting REMICs from federal taxation is "discretionary." *E.g.*, *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271, 284 (E.D. Pa. 2018) (denying motion to dismiss APA challenge to Justice Department "conditions" on receipt of Byrne Justice Assistance Grant program funds). Rather, it is a pure issue of law that has already been decided by Congress.

Plaintiffs do not seek to force a prosecution or audit of a specific or individual taxpayer, but merely to review and correct a wrongheaded, irrational blanket policy decision that is unsupported by fact, logic, or law. Arguably, the IRS retains the discretion to choose to investigate or not investigate a specific taxpayer or to bring a specific enforcement action. Yet even in cases of alleged prosecutorial discretion, the United States Supreme Court has left open the possibility of APA challenges in enforcement were an agency to "consciously and expressly adopted a *general*

*policy*" that is "so extreme as to amount to an abdication of its statutory responsibilities." *Heckler v. Chaney*, 470 U.S. 821, 833, 105 S. Ct. 1649, 1656 n.4, 84 L. Ed. 2d 714 (1985) (e.s.) (citing *Adams v. Richardson*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973) (en banc)). The IRS' position on REMIC income may be viewed as "general policy."

Too much money is owed to the Treasury from REMIC sponsors for the IRS' blanket policy on REMIC tax compliance to be written off as a discretionary enforcement decision. The IRS does not have discretion to summarily overrule Congress' mandate in the Internal Revenue Code. It lacks agency discretion to simply ignore or decline to collect an entire type of income tax in the categorical fashion alleged here. *In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013) (the "President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress"). Congress might reasonably have expected that the IRS will not pursue *every* REMIC's failure to meet the conditions of IRC § 860(D)(4), but the IRS's present decision is to pursue *none*. This *is* a policy decision amounting to a complete abdication of statutory responsibility described by *Heckler v. Chaney*.

Similarly, before reaching an enforcement decision, the IRS was obligated to process the Whistleblowers' information in accordance with its own procedures. An entire *class of prerequisite procedural steps* were ignored in the investigative

process vis-à-vis these Plaintiffs. [D.E. 1 at ¶¶ 28-29]. This procedural failure led to an arbitrary, irrational end result: ignoring substantial income tax owed by an entire class of substantial taxpayers. Billions of dollars are at stake, which are presently being lost, creating a deficit that adversely affects the financial security of the United States and/or shifts the burdens to *other* United States taxpayers contrary to Congressional intent. Taking the allegations of the complaint as true, the district court could not summarily resolve the issue of 'arbitrary and capricious' agency action *against Plaintiffs* in light of the facts alleged.

### D.    No other statutory bar existed

On appeal, the IRS may argue that some *other* statute bars the claim. The Court should reject those arguments, which were not asserted as bases for dismissal below. In the action below, Plaintiffs did not seek to enjoin or restrain the collection of any tax, nor do they ask the courts to issue a declaratory judgment concerning a tax. *Compare Rivera v. Internal Revenue Serv*., 708 F. App'x 508, 511 (10th Cir. 2017) (a district court cannot enjoin the collection of a tax, nor can it issue a declaratory judgment with respect to federal taxes.). Accordingly, there was no alternative statutory basis to block the claim.

### III.    The government abandoned its service of process argument upon obtaining a favorable decision on the merits.

In its April 1, 2022, motion to dismiss [D.E. 10 at 14-15] the government originally argued that Plaintiffs failed to perfect service of process. As a result, Plaintiffs sought an extension of time to perfect service, which was granted on May 10. On April 22, 2022, a summons was issued to the United States. [D.E. 18]. On June 2, 2022, the district court granted the motion to dismiss and entered judgment at the urging of the government. [D.E. 24, 25]. In its substantive ruling, the district court did not find any fault with the service of process as extended, and proceeded to rule on the merits. Accordingly, the government's "service" argument is mooted by the decision on the merits. If the government successfully maintains here that service of process was still defective even after the extension to May 16, 2022 was granted, then it would mean that any dismissal of the claim should have been without prejudice. *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 183 (11th Cir. 2007) (failure to serve defendants properly meant that district court should never have reached the merits and should have dismissed without prejudice) (citing *Pardazi v. Cullman Med. Center*, 896 F.2d 1313, 1317 (11th Cir.1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.")).

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Court should reverse the dismissal of the complaint below and remand for further proceedings.

Dated: January 6, 2023

**FISHER POTTER
HODAS, PL**
515 N. Flagler Drive, Suite 800
West Palm Beach, FL 33401
Telephone: 561-832-1005
Facsimile: 561-820-9375

*/s/ Gerald F. Richman*
Gerald F. Richman
Florida Bar No.: 066457
gerry@fphlegal.com
eservice@FPHlegal.com

-and-

**SNIFFEN
& SPELLMAN, P.A.**
605 North Olive Avenue
West Palm Beach, FL 33401
(561) 721-4003 (voice)
(561) 721-4001 (fax)
rhauser@sniffenlaw.com
mrodriguez@sniffenlaw.com

*/s/ Robert J. Hauser*
Robert J. Hauser
Florida Bar No. 55141
(B.C.S. Appellate Practice)

*Counsel for Appellants*

34

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that the foregoing Principal Brief of Appellant is printed in 14-Point Times New Roman proportionally spaced font. It complies with the typeface and type style requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)(A) and 32(a)(6). I FURTHER CERTIFY that it complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) in that it contains 7455 words, excluding the content exempted by Rule 32(f).

*/s/ Robert J. Hauser*
Robert J. Hauser
Florida Bar No. 55141
(B.C.S. Appellate Practice)
**SNIFFEN & SPELLMAN, P.A.**
605 North Olive Avenue
West Palm Beach, Florida 33401
(561) 721-4003 (voice)
(561) 721-4001 (fax)
rhauser@sniffenlaw.com
mrodriguez@sniffenlaw.com
*Counsel for Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2023, 4 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

> David J. Smith
> Clerk of Court
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth St., N.W.
> Atlanta, Georgia 30303

On this same date, a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

> */s/ Robert J. Hauser*
> Robert J. Hauser
> Florida Bar No. 55141
> (B.C.S. Appellate Practice)
> SNIFFEN & SPELLMAN, P.A.
> 605 North Olive Avenue
> West Palm Beach, Florida 33401
> (561) 721-4003 (voice)
> (561) 721-4001 (fax)
> rhauser@sniffenlaw.com
> mrodriguez@sniffenlaw.com
> *Counsel for Appellants*